UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOSEPH A. TOKARZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:03-CV-149-PRC |
| | ) |
| VENTAIRE CORPORATION, a | ) |
| Subsidiary of Havens Steel, HAVENS | ) |
| STEEL, MILTONA CANOPY, | ) |
| RUSSELL LEWIS, DAVEY MOATS, JR., | ) |
| and JAY WANGERIN | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on (1) Plaintiff Joseph A. Tokarz's Motion for Summary Judgment [DE 99], filed by Plaintiff Joseph A. Tokarz on February 28, 2006, and (2) a Motion to Strike [DE 124], filed by Defendant Miltona Canopy ("Miltona Canopy") on May 4, 2006. For the following reasons, the Court grants Defendant Miltona Canopy's Motion to Strike and denies Plaintiff Tokarz's Motion for Summary Judgment.

**PROCEDURAL BACKGROUND**

On March 19, 2003, a Complaint was filed in Lake Superior Court by Tokarz, alleging that the negligent construction, installation, and design of a canopy by Ventaire Corporation ("Ventaire"), Havens Steel, and Miltona Canopy caused a piece of sheet metal to fall and injure Tokarz while he worked. On May 15, 2003, Defendant Miltona Canopy answered Plaintiff's Complaint and provided affirmative defenses.

On April 21, 2003, the case was removed to this Court.

On May 1, 2003, Tokarz filed an Amended Complaint naming Russell Lewis as an additional Defendant and demanding a jury trial. On May 23, 2003, Miltona Canopy Answered Plaintiff's Amended Complaint and provided affirmative defenses.

On March 2, 2004, Plaintiff filed a Motion for Leave to File an Amended Complaint, which was granted on March 9, 2004.

On March 3, 2004, Plaintiff filed a Motion for Default Judgment as to Defendant Lewis. On March 10, 2004, District Court Judge Rudy Lozano entered an order denying as moot Plaintiff's Motion for Default Judgment as to Defendant Lewis.

On March 10, 2004, Plaintiff filed a Second Amended Complaint additionally naming as defendants Davey Moats Jr., Dave Moages, and Jay Wangerin. The Plaintiff's Second Amended Complaint is deemed filed as of March 2, 2004. On March 22, 2004, and April 13, 2004, Miltona Canopy and Havens Steel filed an Answer to Plaintiff's Second Amended Complaint respectively.

On March 30, 2004, Defendant Havens Steel filed a Notice of Filing Bankruptcy.

On April 15, 2004, Havens Steel and Ventaire filed a Motion for a Stay of Proceedings and a Motion to Vacate Dates. On May 6, 2004, these motions were granted in part and denied in part. The action was stayed as to Havens Steel and Ventaire, but the action continued as to all other defendants.

On June 17, 2004, Moats filed an Answer to Plaintiff's Amended Complaint and affirmative defenses.

On August 18, 2004, Plaintiff filed a Third Amended Complaint. The Third Amended Complaint did not include Moages, and on September 2, 2004, he was terminated from the case. On August 23, 2004, September 7, 2004, and September 17, 2004, Moats and Miltona Canopy,

Havens Steel and Ventaire, and Wangerin, respectively, filed an answer to Plaintiff's Third Amended Complaint. Lewis has not filed an Answer to the Third Amended Complaint.

On September 24, 2004, Ventaire filed a Motion to Lift Stay relating to Ventaire, which was granted the same day.

On November 21, 2005, an Amended Motion to Stay and Notice of Bankruptcy was filed by Miltona Canopy. The Motion to Stay was granted on November 22, 2005.

On February 22, 2006, the case was reassigned, upon full consent of the parties, to Magistrate Judge Cherry. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On February 28, 2006, Tokarz filed the instant Motion for Summary Judgment. On March 27, 2006, Miltona Canopy filed a Response to Plaintiff's Motion for Summary Judgment, and on April 26, 2006, Tokarz filed a Reply.

On February 28, 2006, Tokarz filed a Motion to Lift Stay entered for Miltona Canopy, and on March 1, 2006, that motion was granted.

On May 3, 2006, Tokarz filed a Motion to Amend/Correct its Amended Complaint, which was granted on May 24, 2006.

On May 8, 2006, Miltona Canopy filed the instant Motion to Strike Plaintiff's Reply to Defendant Miltona Canopy's Response to Plaintiff's Motion for Summary Judgment. On May 16, 2006, Tokarz filed a Response. Miltona Canopy did not file a Reply.

On May 25, 2006, Tokarz filed a Fourth Amended Complaint with leave of Court.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[1] Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

---

[1] Tokarz included the Indiana *state* law standard for summary judgment in its brief. While Miltona Canopy correctly cited Fed. R. Civ. P. 56(c), it then cited cases concerning both the state and federal standards. The standard for summary judgment in federal court is governed by federal, not state, law. *See Mayer v. Gary Partners and Co., Ltd.*, 29 F.3d 330, 334 (7th Cir. 1994) (holding that the federal standard applies to a ruling on summary judgment) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986); *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir. 1990)); *see also Cole v. Gohmann*, 727 N.E.2d 1111, 1114 (Ind. Ct. App. 2000) ("Indiana does not adhere to *Celotex* and the federal methodology.") (citing *Jarboe v. Landmark Cmty. Newspapers*, 644 N.E.2d 118, 123 (Ind. 1994)). Under the Indiana standard for summary judgment, the moving party must demonstrate the absence of any genuine issue of fact as to a determinative issue; only then must the non-movant come forward with contrary evidence. *See Cole*, 727 N.E.2d at 1114. In contrast, under the federal standard, the moving party is not required to negate an opponent's claim; rather "the movant need only inform the court of the basis of the motion and identify relevant portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact,'" and the "burden then rests upon the nonmoving party to make a showing sufficient to establish the existence of each challenged element upon which the non-movant has the burden of proof." *Id.* (quoting *Celotex*, 477 U.S. at 323).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the

non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## FACTUAL BACKGROUND[2]

The following are the facts viewed in the light most favorable to Miltona Canopy, the nonmoving party. Miltona Canopy, a sole proprietorship owned by Noland Hanson, is in the business of building and erecting canopies. Ventaire contracted with Miltona Canopy to do a refacing job at a Flying J Truckstop near Lowell, Indiana. The work was to be completed over several days, beginning on October 7, 2001. Miltona Canopy routinely does this type of work and has done similar jobs at other Flying J facilities. Because Hanson, who normally led Miltona Canopy's work crews, was injured and could not lead this crew, Miltona Canopy arranged to have Russell Lewis lead the crew. This job was the only work for Miltona Canopy that Lewis ever

---

[2] Many of the exhibit citations that accompany facts in Tokarzs' Statement of Facts do not direct the reader to support relevant to the fact asserted. In other words, when the reader checks the record for support for a fact claimed by Tokarz, the reader is led to information irrelevant to the fact asserted. The Court is not required to scour the record for evidence. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (citing *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001); *Little v. Cox's Supermarkets, Inc.*, 71 F.3d 637, 641 (7th Cir. 1995) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986))). Accordingly, all such unsupported facts will not be considered by the Court.

performed. He was chosen by Miltona Canopy because he owned a business that performed similar work and because of the years of experience that he had with work of this type. At the time of the Flying J job, Lewis was available because his own company, Canopy Plus, had few jobs of its own.

To perform the job, Lewis and a few employees of Miltona Canopy drove from Minnesota to Indiana in Miltona Canopy company vehicles with the company's tools and other equipment. When the crew arrived at the truckstop, it worked without supervision from Miltona Canopy for three days. Then, when a problem arose, Lewis contacted Hanson regarding how to proceed, and Hanson came to the Flying J site from another job site for approximately four hours to provide assistance. He explained to Lewis the order in which the components needed to be installed. Hanson also put up the Flying J emblem and sign box. Miltona Canopy did not set any work schedule for the Lowell project.

Hotel accommodations for everyone making the trip were paid for by Miltona Canopy. Lewis, like Miltona Canopy's other employees, was paid a percentage of the job, although Lewis believes that he was paid a few percent more than the others. Miltona Canopy withheld taxes from Lewis' pay. Any payment information was burned by Hanson. Lewis was given the title of independent contractor, and Miltona Canopy considered him his own boss. Lewis, however, considered himself an employee of Miltona Canopy.

**ANALYSIS**

Prior to addressing Tokarz's Motion for Summary Judgment, the Court considers Miltona Canopy's Motion to Strike Tokarz's reply brief.

## A. Motion to Strike

Miltona Canopy moves the Court to strike the Plaintiff's Reply in support of his Motion for Summary Judgment.[3] Miltona Canopy does so on the grounds that Tokarz's Reply "raises new issues and arguments not previously addressed" in the Motion for Summary Judgment or Miltona Canopy's Response. Def. Mot. to Strike, p. 2.

In a reply brief, the moving part generally cannot raise any issues not addressed in its motion for summary judgment or the non-moving party's response to that motion. *County Materials Corp. v. Allan Block Corp.*, — F. Supp. 2d —, 2006 WL 1314659, at *7 (W.D. Wis. 2006); *Downey v. Union Pac. R.R.*, 411 F. Supp. 2d 977, 981 n.1 (N.D. Ind. 2006) (waiving a new argument in a reply brief as "untimely"). In this circuit, new arguments raised in a reply brief are waived and are not considered by the court.[4] *Fairley v. Andrews*, — F. Supp. —, 2006 WL 1215405, at *11 n.6 (N.D. Ill. 2006); *see also River v. Commercial Life Ins. Co.*, 160 F.3d 1164 (7th Cir. 1998). The reasons for this rule are myriad. For example, "[w]hen an issue is raised for the first time on reply, the adverse party typically has no opportunity to respond and the record on that issue therefore is developed insufficiently for consideration." *Aircraft Gear Corp. v. Marsh*, 2004 WL 2222262, at *3 (N.D. Ill. Sept. 30, 2004); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("undeveloped arguments are waived").

---

[3] Miltona Canopy mistakenly presents this motion under Fed. R. Civ. P. 12(f). Tokarz correctly notes that Rule 12(f) applies only to pleadings and that pleadings, as defined by Fed. R. Civ. P. 7(a), include any complaints, answers, replies to a counterclaim, answers to a cross-claim, third-party complaints, or third-party answers. Therefore, the Reply to the Response to a Motion for Summary Judgment is not a pleading and cannot be stricken pursuant to Rule 12(f).

[4] It should be noted that the *argument* used by plaintiff is not waived for the entire proceeding, but rather the *opportunity* to have it considered on summary judgment is waived.

In his Motion for Summary Judgment, Tokarz requests that the Court find that Lewis was an employee of Miltona Canopy and, therefore, was not an independent contractor. The Defendant's Response argues the opposite–that Lewis was an independent contractor. Tokarz's Reply, rather than addressing the employee/independent contractor line of argumentation, asserts that liability will attach to Miltona Canopy regardless of whether Lewis was an employee of, or an independent contractor with, Miltona Canopy, because Miltona Canopy retained enough control of the work that it is liable to Tokarz for his injuries. In the conclusion, Tokarz abandons his earlier contention that Lewis was an employee of Miltona Canopy, claiming instead that he was an independent contractor, but one for which his principal, Miltona Canopy is liable, concluding that summary judgment should be granted on the new ground of Miltona Canopy's negligence. Not only is the relief requested different in the reply brief, but Plaintiff's supporting arguments are also new.[5] The Court will not permit new arguments in a reply brief. Therefore, Miltona Canopy's Motion to Strike the Plaintiff's Reply is granted, and the Reply is stricken in its entirety.

**B. Motion for Summary Judgment**

In his Motion for Summary Judgment, Tokarz asks the Court to find that Lewis was an employee of Miltona Canopy while working on the canopy installation project at the Flying J in Lowell, Indiana. In response, Miltona Canopy argues that Lewis was an independent contractor, and that, at a minimum, there is a question of material fact for the jury as to Lewis' employment status.

---

[5] In his response to Miltona Canopy's motion to strike, Tokarz concedes that his reply was mistitled and that the title does not reflect the arguments made therein. Be that as it may, the arguments are still in support of a new basis of summary judgment and a new theory of negligence.

The question of whether one acts as an employee or as an independent contractor is generally a question for the finder of fact. *Moberly v. Day*, 757 N.E.2d 1007, 1009 (Ind. 2001) (citing *Mortgage Consultants, Inc. v. Mahoney*, 655 N.E.2d 493 (Ind. 1995)); *GKN v. Magness*, 744 N.E.2d 397, 402 (Ind. 2001). However, when the evidence is undisputed and reasonably susceptible to but one inference, the Court may properly determine a worker's classification as a matter of law. *Moberly*, 757 N.E.2d at 1009 (citing *Hale v. Kemp*, 579 N.E.2d 63 (Ind. 1991)); *Howard v. U.S. Signcrafters*, 811 N.E.2d 479, 481-82 (Ind. App. Ct. 2004).

To determine whether Lewis acted as an employee or as an independent contractor, the Court examines the following ten (10) factors:

(1) the extent of control which, by the agreement, the master may exercise over the details of the work;
(2) whether or not the one employed is engaged in a distinct occupation or business;
(3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(4) the skill required in the particular occupation;
(5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(6) the length of time for which the person is employed;
(7) the method of payment, whether by the time or by the job;
(8) whether or not the work is a part of the regular business of the employer;
(9) whether or not the parties believe that they are creating the relation of master and servant; and
(10) whether the principal is or is not in business.

*Moberly v. Day*, 757 N.E.2d 1007, 1010 (Ind. 2001) (citing Restatement (Second) of Agency § 220(2) (1958)); *Howard*, 811 N.E.2d at 482. When evaluating these factors, the Court "consider[s] all factors, and no single factor is dispositive." *Moberly*, 757 N.E.2d at 1010 (citing *Mortgage Consultants*, 655 N.E.2d at 496). The factors are used in a balancing test, not a test where the majority wins. *See GKN*, 744 N.E.2d at 402. "[A]lthough not dispositive, the right to control the

manner and means by which the work is to be accomplished is the single most important factor in determining the existence of an employer-employee relationship." *Id.* at 403; *Moberly*, 757 N.E.2d at 1010. If a factor is inconclusive, it will be given no weight. *See Howard*, 811 N.E.2d at 483 (giving factors with no evidence or evidence that is not conclusive no weight).

In this case, there is conflicting evidence for many of the ten factors, and persuasive arguments can be made for either employee or independent contractor status. Therefore, many of the factors do not clearly support any conclusion. As set forth below, the Court finds that the evidence is not undisputed and reasonably susceptible to only the inference of an employee/employer relationship such that the question of worker status becomes one of law, but rather that the permissible inferences require a determination of worker status by the trier of fact. The court addresses each factor in turn.

*1. Extent of Control over Details*

Lewis was chosen by Hanson to lead the team for the refacing job because of his experience. His work schedule on the job was not set by Miltona Canopy. Lewis and his crew worked for three days without direction from Miltona Canopy. But for the call to Hanson, it appears that Lewis would have completed the project without supervision from Hanson. These facts suggest that Lewis was an independent contractor. As for other details of the job, Miltona Canopy provided the crew and directed Lewis to the work site, and Lewis and his crew used Miltona Canopy trucks and equipment. When Lewis encountered a problem, he stopped work on the project and called Hanson to the work site for direction. Despite the contentions of the parties, it is unclear as to whether Lewis contacted Hanson *because he had control* over how the project had to be completed or, rather,

11

whether Hanson was contacted for tactical assistance, based on his personal experience on jobs of this type, *despite the fact that he did not retain control* of the details of the work. It is unclear from the record whether Hanson gave Lewis instructions at the outset on the best means by which to complete the project. Because the evidence is conflicting and therefore inconclusive, no weight will be given to this factor.

*2. Occupation or Business of the One Employed*

At the time of the job, Lewis owned and operated his own canopy business. Indeed, he was chosen for his experience with canopy work. He was considered for and accepted the job because, at the time, his company had little work. Although Lewis' business engaged in the same type of business as Miltona Canopy, namely the canopy business, the operative fact is that he owned his own distinct business. This suggests that Lewis was an independent contractor.

*3. Kind of Occupation in the Locality*

The normal practice of Miltona Canopy was for Hanson to lead the crew on a job like the one at the Flying J, not to have a supervised employee lead the crew. However, the record is inconclusive as to whether it is the normal practice, in the locality, for work of this occupation to be done under the supervision of the employer or for the work to be performed by a specialist without supervision. Therefore, no weight is given to this factor.

*4. Skill Required*

Lewis was chosen to lead the crew because of his experience with this type of work. The crew was not sent alone or with an inexperienced supervisor presumably because an experienced or skilled supervisor was needed. The record also suggests that Hanson, the owner, and not one of the lesser skilled employees, normally supervised the projects. This suggests that Lewis was an independent contractor who stepped in temporarily to fill a need within the company.

*5. Supplier of Equipment, Tools, and Work Location*

Miltona Canopy provided all equipment, trucks, heavy machinery, and tools, many of which would have been of substantial value. Miltona Canopy determined the work location and provided transportation to the work site as well as hotel accommodations for all of the workers. This suggests that Lewis was an employee.

*6. Length of Employment*

Lewis worked for Mitlona Canopy for a period of four to five days and only on the Flying J project. Lewis was able to get away from his own company because there was some down time between his company's projects. This suggests that he was an independent contractor. In fact, both Tokarz and Miltona Canopy agree that this factor supports the conclusion that Lewis was an independent contractor.

*7. Method of Payment*

Lewis was paid a lump sum representing a percentage of the value of the total job, and Lewis believes that he was paid a slightly higher percentage than the other workers. This would suggest that he was an independent contractor. However, it was the practice of Miltona Canopy to pay all its employees a percentage of each job. Miltona Canopy deducted Lewis' income taxes, which suggests that he was an employee. Because the facts are inconclusive as to this factor, it is given no weight.

*8. Regular Business of Employer*

The type of work performed at the Flying J by Miltona Canopy, namely refacing, is a part of the regular business of Miltona Canopy. Therefore, this factors suggests that Lewis was an employee.

*9. Belief of the Parties*

Miltona Canopy gave Lewis the title of independent contractor and considered Lewis his own boss. In contrast, Lewis referred to himself as an employee and took direction on the details of the work from Miltona Canopy. Because this evidence is inconclusive, this factor is given no weight.

*10. Whether the Principal is in Business*

At the time of the Flying J job, Miltona Canopy was in the business of building and refacing canopies. This suggests that Lewis was an employee. The parties are in agreement that this factor suggests an employment relationship.

As demonstrated by the Court's balancing of the ten factors, there is conflicting evidence as to whether Lewis was an employee of Miltona Canopy or an independent contractor. In particular, the first and most important factor, that of control, is inconclusive. The remaining factors do not unambiguously suggest an employment relationship, as argued by Tokarz. Rather, taken as a whole, the evidence is neither "undisputed" nor "susceptible to but one inference," and the Court cannot find as a matter of law that Lewis was an employee. Therefore, the Court denies Tokarz's Motion for Summary Judgment.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Defendant's Motion to Strike [DE 124]. The Plaintiff's Reply to the Defendant's Response to the Plaintiff's Motion for Summary Judgment [DE 121] is hereby **STRICKEN**.

The Court **DENIES** the Plaintiff's Motion for Summary Judgment [DE 99].

SO ORDERED this 26th day of June, 2006.

    s/ Paul R. Cherry
    MAGISTRATE JUDGE PAUL R. CHERRY

UNITED STATES DISTRICT COURT

cc:	All counsel of record